422 So.2d 1263 (1982)
Carl W. TANNER
v.
CITY OF BATON ROUGE, et al.
No. 82 CA 0003.
Court of Appeal of Louisiana, First Circuit.
October 12, 1982.
Rehearing Denied December 16, 1982.
*1264 Alva L. Carbonette, Baton Rouge, for plaintiff-appellant Carl W. Tanner.
Charles E. Pilcher, Asst. Parish Atty., Baton Rouge, for defendant-appellee City of Baton Rouge and Parish of East Baton Rouge.
Before LOTTINGER, COLE and CARTER, JJ.
CARTER, Judge.
This proceeding was instituted by Carl Tanner by a petition entitled "Petition in Suit for Reinstatement of Employment and for Damages." After trial on the merits, judgment was rendered in favor of defendants, City of Baton Rouge and Parish of East Baton Rouge. Mr. Tanner has perfected this appeal. We affirm.
On September 12, 1975, Carl Tanner was dismissed from his job as a Plumbing Inspector I in the Inspection Division, Department of Public Works (Department), City of Baton Rouge and Parish of East Baton Rouge, Louisiana. He was discharged by Ray Burgess, Director of Public Works, on recommendation of Mr. R.C. Groht, Superintendent of the Inspection Division, for the stated reasons that his actions were not in the best interest of the City-Parish and that they were insubordinate to the instructions he had received from his immediate supervisor in that he failed to enforce the laws that he was employed to uphold. It was the opinion of Mr. Groht, concurred in by Mr. Burgess, that because of Mr. Tanner's actions, he could not effectively perform the duties assigned to him as Plumbing Inspector.
Mr. Tanner appealed his dismissal to the City-Parish Personnel Board in accordance with the provisions of Rule XI of The Rules Governing Employees in the Classified Service. The appeal was heard on September 30, 1975, and the Board upheld the discharge finding that Mr. Tanner's activities were detrimental to the efficiency of the City-Parish public services as performed through its employees, that his statements and expressions definitely affected the working relationship with his superiors and co-workers and adversely affected the daily operation of the Department of Public Works and indicated an inability to perform his responsibilities as required by law.
Mr. Tanner's dismissal arose out of the following set of facts, as found by the City-Parish Personnel Board. A form letter was sent to all residents of Village St. George, a subdivision in East Baton Rouge Parish, informing the residents that they were required to tie-in to the sanitary sewer collection line. The letter provided a deadline for the tie-in and contained reference material citing authority for the Department of Public Works to make this requirement. Reports were received by the Department that Mr. Tanner was advising residents that sewer tie-ins as ordered by the City-Parish were unnecessary and unconstitutional and that he was encouraging residents to seek legal assistance. On September 9, 1975, at a meeting of the residents of Village St. George and several city and parish officials, called to clear up the confusion concerning the sewer tie-in requirements, Mr. Tanner admitted having encouraged the residents to resist the tie-ins and made a statement to the residents, "This is a rip-off. It's unconstitutional and they are stealing your money." The Personnel Board found that Mr. Tanner's dismissal was a result of his activities and statements at this meeting.
Mr. Tanner then filed suit in the Nineteenth Judicial District Court by a petition entitled "Petition in Suit for Reinstatement of Employment and for Damages." The trial judge treated the suit as an appeal from the finding of the City-Parish Personnel Board. He stated that the finding of the Board must be upheld unless there was an abuse of administrative discretion by the Board acting arbitrarily, capriciously, or in a discriminatory manner.
*1265 From a judgment affirming the decision of the Personnel Board, Mr. Tanner appealed to this court alleging four assignments of error.

ASSIGNMENTS OF ERROR
(1) The trial court erred in treating the suit as an appeal from the decision of the City-Parish Personnel Board, in lieu of treating it as a suit for damages.
(2) The trial court erred in failing to question the validity or existence of the laws or regulations plaintiff allegedly failed or refused to enforce.
(3) The trial court erred in not considering plaintiff's allegation that he was deprived of his right to freedom of speech.
(4) The trial court erred in treating the case as an appeal from the Personnel Board, thus disregarding the evidence presented at trial.

ASSIGNMENTS OF ERROR NOS. 1 AND 4
Mr. Tanner's petition was entitled, "Petition in Suit for Reinstatement of Employment and for Damages." The trial judge, in his written reasons for judgment, stated:
"Notwithstanding the heading on the petition and the allegations contained therein, this must be considered as an appeal from action taken by the City-Parish Personnel Board, after a hearing held September 30, 1975, which upheld plaintiff's dismissal as a classified employee of the Department of Public Works (DPW)."
Mr. Tanner contends that under the applicable City-Parish rules, there is no appeal beyond the appeal to the Personnel Board, that the district court was not provided by law with the necessary appellate jurisdiction to hear the case as an appeal, and that the trial court erred in treating the suit as an appeal in lieu of a full scale suit to be decided on the merits in a trial de novo.
The Louisiana Constitution of 1974 provides in Article 5, Section 16(B)[1] that district courts have appellate jurisdiction as provided by law. The rules governing classified employees provide that the decision of the Personnel Board is final; there is no provision for an appeal to the court system.
However, courts have granted judicial review of administrative proceedings in the absence of statutory authority. In the case of Anderson v. State, 363 So.2d 728 (La.App. 2d Cir.1978), the court said, "Even in the absence of statutory authority, the right of judicial review of administrative proceedings exists. Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (La.1971); Werner v. Bd. of Trustees of New Orleans Police, etc., 360 So.2d 615 (La.App. 4th Cir.1978)." In reviewing the decision of an administrative agency, the district court is exercising its exclusive original jurisdiction. Anderson v. State, supra. Bowen v. Doyal, supra.
Though the trial court termed its review an "appeal", it was actually exercising its exclusive original jurisdiction to review decisions of administrative boards.
Plaintiff's petition to the district court prayed for reinstatement, for restoration of all benefits, and for damages for suffering and humiliation. We just stated that the district court had "original" jurisdiction to hear the suit. However, the district court cannot at this stage afford a trial de novo and ignore the prior finding and conclusions of an administrative body. Its proper function is to serve as a court of judicial review.
We quote with approval the following language from Gertler v. City of New Orleans, 346 So.2d 228 (La.App. 4th Cir.1977): writ denied, 349 So.2d 885 cert. denied, 434 U.S. 1068, 98 S.Ct. 1248, 55 L.Ed.2d 770, which clearly defines the proper function of the trial court in a case such as the instant one.
"But, even if the district court has `original jurisdiction,' it must, generally, *1266 accord a presumption of regularity to the decisions of boards of adjustment. This presumption is rebuttable. However, no reviewing court can, out of hand, simply substitute its own judgment for that of a zoning board or other properly constituted and validly functioning administrative agency. It must first determine or establish whether or not the decision of the board or administrative agency is supported by substantial and competent evidence adduced in proceedings which are regular and orderly."
In the case of Messina v. Rapides Parish Police Jury, 373 So.2d 745 (La.App. 3rd Cir.1979), the plaintiffs were removed as members of the Rapides Parish Housing Authority by the police jury, and they "appealed" to the district court. The district court reinstated them in their positions, the police jury appealed to the Second Circuit, and that court reversed the decision of the district court. Finding no statutory standard of review and no prior adjudications, the court looked to similar situations involving governmental, administrative, and quasi-administrative bodies. After a review of analogous cases, the court said:
".... we believe that the most logical standard is that set forth in the above, analogous, cases involving school boards, civil service boards, zoning boards, and an executive order in an adjudicatory proceeding under the Administrative Procedure Act, to-wit:
(1) In accordance with authority and formalities of the law and
(2) Supported by substantial evidence, in that the action was not arbitrary or capricious or an abuse of discretion.
This court has had occasion to recognize that standard in a similar case. In Cochran v. City of Baton Rouge, 399 So.2d 656 (La. App. 1st Cir.1981), Mr. Cochran appealed the decision of the district court which upheld his dismissal by the Personnel Board as an Airport Safety Officer. The transcript of testimony taken before the Board was incomplete and inaccurate, so this court remanded the case to the Board with instructions to prepare a complete transcript or hold a second hearing. In so remanding, we stated, "We are required to determine if the finding of the agency is arbitrary or an abuse of discretion, and if it is supported by substantial evidence."
In the present case, there was no transcript of the proceedings of the Personnel Board for the district court to review, and ordinarily the case would be remanded to the Personnel Board. See Cochran, supra. However, both parties were given the opportunity to present witnesses and offer evidence in the district court, and, the trial court had a summary of the factual findings and conclusions of the Board. Nothing more could be gained by remanding the case. Mr. Tanner was given a complete hearing at which he had every opportunity to present evidence and plead his case.
After reviewing the evidence presented at trial and the finding and conclusions of the Personnel Board, the trial judge said,
"This court is not in a position to substitute its opinion for that of an administrative tribunal in the absence of a finding of an abuse of their administrative discretion by acting arbitrarily, capriciously, or in a discriminatory manner."
This was the correct standard to apply. Messina, supra; Cochran, supra.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
Mr. Tanner argues that the trial judge should have recognized that there was no provision in the Plumbing Code which required the residents of St. George to perform the bypass demanded by the Department of Public Works. He urges that as his duty was to enforce the Plumbing Code, he could not have been remiss in not enforcing a policy not specified in the Code. Mr. Tanner also argues that the trial court erred in not considering his allegation that he was deprived of his right to freedom of speech.
In answer to the arguments, we quote the following from the trial judge's written reasons for judgment:
"Plaintiff's position is that since everyone at the meeting was aware of the fact that he was speaking as a private individual, *1267 not representing the City-Parish at the meeting, that he could not be censured for any statements while exercising his right to free speech. This argument begs the issue. Clearly, in this court's estimation, what plaintiff was told prior to speaking was that he could not speak as a representative of the City-Parish government and that any remarks he made were strictly his own. Plaintiff's statements were certainly detrimental to his working relationship with his employer and his opinions directly affected his ability to perform his duties. He had an alternative, but it should not have been by making public disparaging remarks against his employers. The City-Parish Council, the legislative arm of the City-Parish government, could easily have been apprised of his opinion as to this ordinance. If properly petitioned, the council could have taken whatever remedial action it thought appropriate under the circumstances."
The trial court considered the real issue as whether Mr. Tanner had injured his working relationship with his employer and whether his opinions directly affected his ability to perform his duties.
All citizens have the right to criticize public officials on their official conduct and to comment on matters of public interest. Flynn v. Giarrusso, 321 F.Supp. 1295 (E.D.La.1971). This right is not only important to the individual but also is essential to the Democratic process. Free criticism of official conduct and free speech on matters of public interest are essential to ensuring the lawful and proper functioning of the government. However, the state, as an employer, has a legitimate interest and right in regulating to some degree the speech of its employees. Flynn v. Giarrusso, supra; Pickering v. Bd. of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).
In the Pickering case, supra, a teacher was dismissed from employment for writing and having published a letter criticizing certain actions of the school board. The court said that "(T)he problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."
In deciding that the teacher was wrongfully dismissed, the court made several observations pertinent to an analysis of the case at hand. It noted that the statements made by the teacher were in no way directed towards any person with whom he would normally be in contact with in the course of his daily work as a teacher. Therefore, there was no question of maintaining either discipline by immediate superiors or harmony among coworkers. In the case at hand, the statements were directed toward Mr. Tanner's immediate superiors. By directing such a personal attack, he undermined their authority and created a situation in which a tense, uneasy relationship was bound to develop.
Most important to the case at hand is the following language from the court in Pickering:
"What we do have before us is a case in which a teacher has made erroneous public statements upon issues then currently the subject of public attention, which are critical of his ultimate employer but which are neither shown nor can be presumed to have in any way either impeded the teacher's proper performance of his daily duties in the classroom5 or to have interfered with the regular operation of the schools generally. In these circumstances we conclude that the interest of the school administration in limiting teachers' opportunities to contribute to public debate is not significantly greater than its interest in limiting a similar contribution by any member of the general public." (Footnote omitted)
The Personnel Board and the trial court both found that Mr. Tanner's statements and expressions adversely affected the daily operation of the Department of Public Works. Mr. Tanner's job as a public employee was to enforce the very policies he had so vehemently criticized. He stated that he did not feel obligated to perform certain duties relating to the sewer tie-in required of him by his superiors. The *1268 project the Department had undertaken to effect the sewer tie-ins was thus impeded. When a public agency, such as the Department of Public Works, ceases to run smoothly and efficiently, important public services are disrupted. The interest of the State becomes paramount in this type of situation and reasonable restrictions on speech must be allowed to support that intent.
Mr. Tanner certainly had the right and the privilege to express his opinion concerning the practices of the Department. The exercise of this right, however, cannot interrupt the functioning of the government and the important services it renders.
As the trial judge pointed out, Mr. Tanner had an alternative. The trial judge said:
"The City-Parish Council, the legislative arm of the City-Parish government, could easily have been apprised of his opinion as to this ordinance. If properly petitioned, the council could have taken whatever remedial action it thought appropriate under the circumstances."
We agree with the trial judge's analysis of this case.
For the above reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] "(B) Appellate Jurisdiction. A district court shall have appellate jurisdiction as provided by law."