489 So.2d 1308 (1986)
William D. JAMES
v.
CITY OF BATON ROUGE, Louisiana Through the DEPARTMENT OF PUBLIC WORKS, and Robert G. Graves as Director of the Department of Public Works.
No. CA 85 0234.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
*1309 Stephen M. Irving, Baton Rouge, for plaintiff-appellant William D. James.
Murphy J. Foster, III, Baton Rouge, for defendants-appellees City of Baton Rouge, La., through Dept. of Public Works and Robert C. Graves as Director of Dept. of Public Works.
Before LOTTINGER, CRAIN and ALFORD, JJ.
LOTTINGER, Judge.
This appeal involves the validity of certain disciplinary actions imposed upon plaintiff, William D. James, a classified employee of the City-Parish.
Plaintiff appeals from a trial court judgment affirming a decision of the Baton Rouge City Personnel Board (Board), which rescinded plaintiff's termination but demoted him to a lower position and imposed a thirty-day suspension without pay. Plaintiff was also placed on probationary status for six months. Following this decision, plaintiff instituted proceedings in district court by a petition entitled "Appeal from City-Parish Personnel Board," which sought reinstatement to his former position and back wages for the period of his suspension, as well as the wage differential between his current and former position. This matter was submitted to the trial court on the record of the hearing conducted by the Board. The trial court concluded the record supported the Board's findings and upheld its decision. Plaintiff now appeals to this court.

FACTS
At the time in question, plaintiff was employed by the Department of Public Works (DPW) as an Assistant Building Official. His duties included supervision of the City-Parish plumbing section. On the evening of March 30, 1982, plaintiff received a telephone call from Jimmy Scott, a Baton Rouge contractor with whom plaintiff was apparently fairly well acquainted. Scott asked James to obtain a copy of the City's master plumber's licensing test for a friend to use as a "study guide." Scott allegedly requested that James meet him for lunch the next day and bring the test so he could give it to David Bourland, the mayor's chief administrative assistant. When James asked Scott why Bourland wanted the test, Scott did not reply. James then said, "Well, maybe I shouldn't ask."
The next morning James asked Ron Causey, a city plumbing inspector to get him a copy of the test. James told Causey not to let Mr. Mut, the Chief Inspector, know about the matter. When Causey indicated he did not know where the test was kept, James asked him to try and find a copy. James said he would get Mut out of the building while Causey looked for the test. Although James testified he told Causey to put the test in an envelope, seal it and put Bourland's name on it, Causey denied receiving any such instruction.
Mr. Causey did not obtain a copy of the test. He had doubts as to the propriety of the request and sought advice from a co-worker. Ultimately, the matter came to the attention of James' superiors, including Bourland, who denied any knowledge or connection with the matter.
James claims he believed Scott's request was made on behalf of Bourland, who he assumed wished to review the test because of complaints it was unfair. He argues this belief was reasonable since he knew Scott and Bourland to be close friends, he had previously received messages from Bourland through Scott and he had heard Scott make comments to the effect Bourland was on his payroll. He maintains the closeness of their friendship was evidenced by the fact Scott, on several occasions, had inside information regarding city-parish matters, which he passed on to James. Bourland denied ever giving any inside information to Scott or sending any messages to James through him. He further indicated he had never given James any reason to believe Scott had authority to act on his behalf.
*1310 As a result of this incident James was initially suspended for four days and then upon his return to work he was terminated. As discussed above, James then appealed to the Board which revoked his termination, but imposed a thirty day suspension without pay and demoted him to the position of Building Inspector I.

ASSIGNMENTS OF ERROR
Appellant contends (1) the Board committed an error of fact in concluding James' conduct reduced the efficiency of DPW, his employing agency, and (2) that he was illegally subjected to disciplinary action twice for the same incident.
Although appellee did not file a motion to dismiss, it now argues James has failed to set forth a proper jurisidictional basis for this appeal. Appellee requests James' appeal be dismissed. This contention is without merit since this Court clearly has jurisdiction over this appeal. See Tanner v. City of Baton Rouge, 422 So.2d 1263 (La. App. 1st Cir.1982) writ denied, 429 So.2d 128 (La.1983).

I
James does not dispute he sought to obtain a copy of the master plumber's test. However, in defense of his actions he argues that: he did not know access to the test was limited, particularly since copies of the old city electronics licensing test were available to applicants; he only intended to obtain a copy of an old test no longer in use rather than the current test; and he reasonably believed Scott's request was made on behalf of Bourland. Basically, this case comes down to issues of fact and credibility. The Board obviously made a credibility determination adverse to James, concluding "He committed an act which he knew or should have known was improper."
The standard of review applied in cases of this nature was set forth by this Court in Tanner v. City of Baton Rouge, supra. A presumption of regularity must be accorded to the Board's decision. Further, the decision of the Board may not be overturned absent a finding that it is either not supported by substantial and competent evidence or it is arbitrary, capricious and an abuse of discretion. Tanner, at p. 1266. Additionally as the finder of fact which personally observed the witnesses, the Board's credibility determination is entitled to great weight.
There is substantial evidence to support the Board's decision, which does not appear to have been arbitrary, capricious or an abuse of discretion. James' observation that it was perhaps best if he did not know the reason Bourland wanted the test and the clandestine manner in which he sought to obtain it indicates his awareness of the impropriety of his conduct. Even if he did not know, he should have. Even though there was no written rule limiting access to the test, common sense should have indicated this was the case. At the very least, James should have inquired of those responsible for the test as to whether it was available. The manner in which James sought to obtain the test is inconsistent with his claim that he believed it was generally available. The detrimental effect this conduct had upon DPW is readily apparent. This assignment lacks merit.

II
In this assignment of error, James argues he has been improperly subjected to disciplinary action twice for the same incident, first by his four-day suspension and then by his termination. In support of this position he relies upon Department of Public Safety v. Rigby, 401 So.2d 1017 (La.App. 1st Cir.1981), writ denied, 406 So.2d 626 (La.1981); Hamlett v. Division of Mental Health, Etc., 325 So.2d 696 (La. App. 1st Cir.1976). In each of these cases employees were disciplined for certain conduct and the incident was thereafter apparently concluded. However, at a latter date the incidents were revived as grounds for further disciplinary action. The Rigby and Hamlett courts held the employing agencies were estopped from taking such action since the employees had already been disciplined.
These cases are distinguishable from the present one. Written notice was *1311 delivered to James on March 31, 1982, of his four-day suspension, pending investigation into the matter. Immediately upon his return following this suspension, he was terminated. At no time prior to his termination was James given reason to believe the incident was concluded. In fact, the letter notifying him of his suspension specifically indicated the possibility of further disciplinary action. Under these circumstances DPW was not estopped from imposing further disciplinary action upon James.
Therefore, the judgment is affirmed at appellant's costs.
AFFIRMED.