763 So.2d 698 (2000)
George JARRETT
v.
CAPITAL AREA LEGAL SERVICES CORPORATION, INCORPORATED and XYZ Insurance Company.
No. 99 CA 0193.
Court of Appeal of Louisiana, First Circuit.
March 31, 2000.
*699 Gerard N. Torry, Alexandria, for Plaintiff/Appellant, George Jarrett.
David M. Bienvenu, Baton Rouge, for Defendant/Appellee, Capital Area Legal Services Corporation.
Before: CARTER, PETTIGREW, and CLAIBORNE,[1] JJ.
CARTER, J.
This is an appeal from a motion for summary judgment dismissing a legal malpractice action against Capital Area Legal Services Corporation (CALS).

FACTS
George Jarrett was terminated from his employment by the Department of Public Works (DPW) for the City-Parish of Baton Rouge in 1984, for unsatisfactory job performance. His unsatisfactory rating stemmed from numerous violations of work rules. Jarrett worked as a waste truck operator for DPW. Upon termination, Jarrett sought the legal assistance of CALS, a non-profit legal aid program for indigent persons in the Baton Rouge community. CALS, through one of its attorneys, Fred Carney, undertook Jarrett's representation at a hearing before the City-Parish Personnel Board (Personnel Board). Following the Personnel Board's support of Jarrett's termination, CALS filed a Petition for Judicial Review of the Personnel Board's decision on December 27, 1984. On May 11, 1990, Jarrett's petition was dismissed for failure to prosecute.
On May 10, 1991, Jarrett filed suit against CALS alleging legal malpractice based on CALS' failure to prosecute his claim for judicial review. On April 3, 1996, CALS filed a motion for summary judgment asserting facts to establish that Jarrett was not improperly terminated, thus he had not sustained any damages. After a hearing, the trial court granted CALS' motion for summary judgment and dismissed Jarrett's malpractice claim. Jarrett appeals the granting of the motion for summary judgment.

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. *700 Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1st Cir.6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 325 (La.1993). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B.
In 1996, the Louisiana legislature amended LSA-C.C.P. art. 966 by adding paragraph (A)(2), which states in pertinent part:
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends.
The summary judgment law, as amended in 1996, was explained in Hayes v. Autin, 96-287, pp. 6-7 (La.App. 3rd Cir.12/26/96), 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41:
Under the amended statute, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. Under Article 966(C), once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Once the motion for summary judgment has been properly supported by the moving party, the failure of the nonmoving party to produce evidence of a material factual dispute mandates the granting of the motion. The amendment to Article 966 brings Louisiana's standard for summary judgment closely in line with the federal standard under Fed. Rule Civ. Pro. 56(c)....
The Legislature amended LSA-C.C.P. art. 966 in 1997 La. Acts No. 483 §§ 1 and 3, in order to clarify 1996 La. Acts No. 9 § 1 of the First Extraordinary Session of 1996, and to legislatively overrule all cases inconsistent with Hayes v. Autin. See 1997 La. Acts No. 483 § 4. Act 483 repealed sections (F) and (G), and amended sections (C) and (E) to read as follows:
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
. . . .
E. A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case.
The retroactive application of the amendment is evidenced by the Legislature's clear expression in § 4 of the Act. The amendment also sought to rectify the misapplication of the article by various state courts in clarifying what the original amendment purported to enact. In our *701 determination of whether the trial court properly granted the motions for summary judgment, we will apply LSA-C.C.P. art. 966 as amended.
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Rambo v. Walker, 97-2371, p. 4 (La.App. 1st Cir.11/6/98), 722 So.2d 86, 88, writ denied, 98-3030 (La.1/29/99), 736 So.2d 840. The law applicable to this present case concerns what elements are required to make out a prima facie case of malpractice. A claim for legal malpractice is stated when the plaintiff alleges that there was an attorney-client relationship, the attorney was guilty of negligence or professional impropriety in his relationship with the client, and the attorney's misconduct caused the client some loss. Prestage v. Clark, 97-0524, p. 9 (La.App. 1st Cir.12/28/98), 723 So.2d 1086, 1091, writ denied, 99-0234 (La.3/26/99), 739 So.2d 800.
CALS contends it is entitled to judgment as a matter of law because there are no facts at issue that would have caused the trial court to overturn the decision of the Personnel Board and reinstate Jarrett. Accordingly, because Jarrett would not have been reinstated, CALS' failure to prosecute Jarrett's petition for judicial review did not cause him to suffer any loss.
In our review of CALS' motion for summary judgment, we must decide if there are any material issues of fact present that would have allowed the trial court to determine if the decision of the Personnel Board was arbitrary or an abuse of discretion, and if the decision was supported by substantial evidence. See Tanner v. City of Baton Rouge, 422 So.2d 1263, 1266 (La. App. 1st Cir.1982), writ denied, 429 So.2d 128 (La.1983); Cochran v. City of Baton Rouge, 399 So.2d 656-57 (La.App. 1st Cir. 1981).
The evidence considered by the Personnel Board included the following. A City-Parish Departmental Memorandum dated August 16, 1983, from C.P. Johnson, the Superintendent of Waste Management, to Jarrett regarding his habitual tardiness informs Jarrett that he had received four verbal warnings for violating work rules in that he was tardy twelve times in a twelve-month period. The memo then details each verbal warning and the periods in which Jarrett was tardy for work. Jarrett was warned in the memo that further occurrences would lead to more severe disciplinary action.
Jarrett was sent another memo from J.D. Hulbert, the Acting Supervisor of Waste Management, dated October 15, 1983. This memo again addressed Jarrett's tardiness and informed him that he had now been tardy for work on fifteen occasions in a twelve-month period. The date of the verbal warning, the specific incidents of tardiness, and the identity of the individual who noted his tardiness were all contained in the memo. Again, Jarrett was informed that further occurrences would lead to more severe disciplinary action, including dismissal.
Jarrett was sent a memo on October 15, 1983, regarding his violations of work rules. This memo detailed four separate occasions wherein Jarrett had violated work rules, including incidents of stopping at a convenience store on his route, leaving trash on his route and refusing to go back for it, reporting to the landfill with a truck not considered loaded, and allowing an unlicensed driver to operate the truck. Jarrett was informed that further occurrences would lead to more severe disciplinary action.
On October 17, 1983, Jarrett was sent another memo from Hulbert, informing him that he had been given another warning for violations of work rules. According to the memo, on October 6, 1983, Jarrett did not refuel his truck and reported to work at 11:40 a.m. Jarrett was also given the warning that further occurrences *702 would lead to more severe disciplinary action, including dismissal.
On November 9, 1983, Jarrett was sent a certified letter from William Addison, Director of the Department of Public Works, suspending Jarrett from November 16-18, 1983. The letter described in detail the seven verbal warnings Jarrett had received from January 1, 1983, through October 31, 1983. It is noteworthy that after Jarrett received his October 17, 1983 warning memo, he committed two more violations of work rules. Specifically on October 29, 1983, Jarrett was issued two verbal warnings by two different people for violations of bringing his truck into the main parking lot, and his failure to refuel another truck. According to this letter, because Jarrett was issued seven verbal warning of work violations, and two chargeable warning letters, he was being suspended for three days. Addison informed Jarrett that should his work habits not improve, more serious disciplinary action, including dismissal, would occur.
Through certified letter dated November 14, 1983, Jarrett was informed of another suspension because of his failure to appear at a meeting of the Personnel Board for a hearing for Craig K. Delaney, despite being subpoenaed. Jarrett's suspension ran from November 28, 1983, through December 1, 1983.
A memo dated May 10, 1984, was sent to Jarrett from Allen Deville, Jr., the Acting Supervisor of Waste Management, informing him that he had received another verbal warning regarding his tardiness. The memo described who issued the warning and when the tardiness occurred. On June 18, 1984, Jarrett was sent another memo by Deville, describing his sixth verbal warning issued for a violation of work rules. The memo described Jarrett's violation of work rules as bringing his truck to the landfill when it was under the required weight to be emptied at the landfill. This was Jarrett's second violation of this particular rule.
On June 29, 1984, Jarrett was sent a certified letter by Addison suspending him from July 11, 1984, through July 13, 1984. According to the letter, the reason Jarrett was being suspended was he had been issued two more verbal warnings of violating work rules since his previous suspension. The letter described the work violations committed by Jarrett, including a warning issued by his supervisor on June 18, 1984, wherein his supervisor indicated he was doing poor work. Jarrett was again warned that more severe disciplinary action, including dismissal, would result if his work habits did not improve.
On June 30, 1984, Jarrett was sent a memo from Deville indicating that he had been given an unsatisfactory rating by his supervisor, Gilbert Sims, Jr., due to the fact he had received numerous work rule violations charged to his work record. On July 23, 1984, Addison sent Jarrett another certified letter informing him that he would be suspended from August 4, 1984, through August 17, 1984. The letter indicated Jarrett had received another verbal warning slip for violation of work rules on July 16, 1984, in that he left his route with uncollected garbage on the street and went home. Jarrett's receipt of the latest verbal warning resulted in a total of eight chargeable warnings and two chargeable warning letters, which were reflected in his personnel file. According to Deville, Jarrett continually failed to heed any of these prior warnings and continued to violate the work rules, thus he recommended a two week suspension. Again, Jarrett was informed that if his work habits did not improve, he could face dismissal.
On September 21, 1984, Addison sent Jarrett another certified letter indicating that his supervisor had re-rated him unsatisfactory. The reason for Jarrett's unsatisfactory rating was the fact that his work record had not improved since his rating of June 30, 1984. As a result, Jarrett was informed he would be suspended from September 25, 1984, through September *703 27, 1984, and dismissed effective September 28, 1984.
Through a certified letter dated September 24, 1984, James L. Llorens, DPW's Personnel Administrator, informed Jarrett of his right to a public hearing to appeal the decision of the Personnel Board. Jarrett timely requested a hearing to appeal his dismissal. The hearing was scheduled for October 11, 1984, and Jarrett was notified by certified mail of the hearing.
Although there is no transcript of the hearing, the record contains the findings and conclusions made by the Personnel Board. The report indicates that Jarrett was represented by his attorney, and had subpoenaed witnesses on his behalf. It is evident that in addition to receiving memos and warning letters, Jarrett was called in by his supervisor on each occasion after receiving verbal warnings. At these meetings, Jarrett was accompanied by a union representative; however, at no time did the union representative see fit to take further action on Jarrett's behalf. The Personnel Board concluded that Jarrett was aware of the rules that he was supposed to follow and had been given several chances to improve his work record but failed to do so. The Personnel Board unanimously agreed to terminate Jarrett.
Based on our review of the record, we find there was substantial evidence to support the Personnel Board's decision to terminate Jarrett.
Jarrett raises the issue that there were deficiencies in the notice of termination to which the CALS attorney failed to object, thereby raising a material issue of fact as to whether he would have been reinstated. Specifically, Jarrett argues he was not furnished with detailed reasons for his termination and that his termination was based on prior incidents for which he had already been disciplined. We disagree.
The termination notice indicates Jarrett was re-rated unsatisfactory by his supervisor, Gilbert Sims, Jr., and that this rating was due to the fact that Jarrett's work record had not improved since his rating given on June 30, 1984. The letter informed Jarrett that as a result of this rating, he would be placed on disciplinary action and dismissed at the earliest possible date.
We find this notice is sufficient to give Jarrett notice of the reason for his dismissal. Notice is sufficient if it apprises an employee of the nature of the charges and the general substance of the evidence against him. Department of Public Safety and Corrections, Office of Youth Services v. Savoie, 569 So.2d 139, 142 (La.App. 1st Cir.1990). On five occasions prior to his discharge, Jarrett received a certified letter regarding warnings he had been given for violations of work rules. According to the summary of the testimony, Hulbert indicated that Jarrett was called in to meet with him each time he received a verbal warning and had a union steward to represent him at these meetings. The record indicates that Jarrett broke many of the same rules more than once, including leaving his route without authorization, tardiness, and failure to operate the trucks within department rules. Moreover, each time Jarrett was sent a certified letter in connection with a suspension, he was warned that further violations would lead to more severe disciplinary action, including dismissal. Each time Jarrett received a new suspension, it was because he had committed another violation of work rules. We reject the notion that Jarrett's termination was based on prior acts for which he had already been disciplined. Rather, we note that after each warning, Jarrett continued to commit new violations, resulting in a poor work record that the DPW is not forced to tolerate.
We do not agree that Jarrett did not have reasonable notice of the grounds for his termination. To require more would intrude on the substantial governmental interest in quickly removing an unsatisfactory employee and create an unwarranted administrative burden. See Department *704 of Public Safety and Corrections, 569 So.2d at 142.
Jarrett also argues that he should also recover against CALS for its failure to file a claim for unemployment benefits on his behalf. However, no such allegation was made in his petition, and CALS contends that such a claim is preempted by LSA-R.S. 9:5605, which provides in pertinent part:
A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
We agree. Any claim Jarrett may have had against CALS for its failure to file a claim for unemployment benefits is prescribed. In enacting the legal malpractice statute of limitations, the Legislature intended that a cause of action be extinguished three years after the act, omission, or neglect giving rise to action, regardless of when negligence is discovered and regardless of whether malpractice action may be brought within that three-year period. Reeder v. North, 97-0239, p. 9 (La.10/21/97), 701 So.2d 1291, 1297.

CONCLUSION
Based on our review of the record, we find there are no material facts at issue that would lead to the conclusion that Jarrett would have been reinstated to his position with DPW. The record indicates there was substantial evidence to support the decision by the Personnel Board to terminate Jarrett. Moreover, there were no facts presented to raise the issue of whether the Personnel Board acted arbitrarily or committed an abuse of discretion in its decision to terminate Jarrett. Accordingly, because there are no facts at issue that could lead us to conclude Jarrett would have been reinstated, he has failed to make a showing that he sustained a loss as a result of CALS' failure to prosecute his suit for judicial review. The judgment of the trial court granting CALS' motion for summary judgment is affirmed with all costs of this appeal assessed against appellant, George Jarrett.
AFFIRMED.
NOTES
[1] Hon. Ian W. Claiborne, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.