960 So.2d 1008 (2007)
Alton MACK
v.
CITY OF BATON ROUGE.
No. 2006 CA 0140.
Court of Appeal of Louisiana, First Circuit.
April 4, 2007.
Writ Denied June 22, 2007.
Denise A. Vinet, Vinet & Vinet, Baton Rouge, Counsel for Plaintiff-Appellant Alton Mack.
E. Wade Shows, Deidre D. Robert, Gwendolyn K. Brown, Office of the Parish Attorney, Baton Rouge, Counsel for Defendant-Appellee City of Baton Rouge.
Before: PARRO, GUIDRY, DOWNING, McDONALD, and McCLENDON, JJ.
GUIDRY, J.
Plaintiff, Alton Mack, sought judicial review of the administrative decision of the Personnel Board of the City of Baton Rouge, Parish of East Baton Rouge *1009 (Board), upholding his termination from the Department of Public Works (DPW). From the district court judgment affirming the Board's decision, Mr. Mack has appealed. We reverse.

FACTUAL AND PROCEDURAL HISTORY
Mr. Mack was employed by DPW for approximately twelve years, until he was terminated for refusing to submit to an alcohol and drug test. On June 9, 2004, Mr. Mack reported to his place of employment, the North Bridge and Canal Lot (the lot). He began his workday after punching in at the time clock at 6:30 a.m. Shortly after he arrived at work, Mr. Mack used one of the telephones in the main office to call his wife, who had paged him. Stephen Phenald, the superintendent of the lot, noticed Mr. Mack using the telephone at a time when he believed Mr. Mack should have already left the lot for his work assignment; therefore, Mr. Phenald advised Philip Jackson, Mr. Mack's immediate supervisor, to discuss the issue with Mr. Mack.
Following the telephone conversation with his wife, Mr. Mack complied with the necessary procedures for taking emergency leave and punched out at the time clock at 7:09 am. Mr. Mack then indicated that he wanted to speak with the superintendent, Mr. Phenald, and his immediate supervisor, Mr. Jackson, regarding his use of the office telephone. Prior to this interaction, it was understood by all parties that Mr. Mack needed to leave work to attend to an emergency. Following the discussion, and just prior to Mr. Mack's departure, Mr. Phenald stated that he smelled alcohol on Mr. Mack's breath. At some point thereafter, Mr. Phenald demanded that Mr. Mack stay because he had to submit to a "drug test."[1] However, Mr. Jackson, Mr. Mack's immediate supervisor, subsequently told Mr. Mack that he could leave and attend to his emergency.[2] Mr. Mack left the lot and did not submit to the test on that day.
On June 10, 2004, Mr. Mack was notified by letter that he was suspended, pending the outcome of a pre-termination hearing. After the hearing, Mr. Mack was terminated from employment with DPW for refusing to submit to the test. Mr. Mack appealed the decision to the Board, which upheld the termination by a 3-2 vote. Mr. Mack then sought judicial review of the Board's decision, and the district court affirmed the decision of the Board. It is from this judgment that Mr. Mack has appealed.

MOTION TO REMAND
As a preliminary matter, we note that Mr. Mack has filed a motion to remand the matter to the district court to allow the district court to provide written findings of fact and reasons for judgment. After the district court signed its judgment affirming the decision of the Board, Mr. Mack timely filed a request for written findings of fact and reasons for judgment. In response, the district court filed the transcript of its oral reasons for judgment into the record. In his motion to this court, Mr. Mack contends that this was not *1010 sufficient to comply with LSA-C.C.P. art. 1917.
In support of this argument, Mr. Mack relies on Alexis v. Conley, 532 So.2d 564 (La.App. 1st Cir.1988). In Alexis, the trial court provided oral findings of fact and reasons for judgment. After receiving a timely request for written reasons for judgment, the trial judge suggested that the requesting attorney contact the court reporter and obtain a transcription of the oral reasons. Instead, the party seeking the written reasons filed a request for supervisory writs to this court. This court ordered the trial judge to provide written reasons, stating:
It is the responsibility of the trial judge to provide written findings of fact and reasons for judgment when requested to do so. It is not the responsibility of a party litigant to contact a court reporter requesting a transcription of oral reasons for judgment. Necessarily, a party litigant may find a need to review reasons for judgment prior to taking an appeal.
Alexis, 532 So.2d at 564-65.
The case currently before this court is distinguishable from Alexis. In this matter, the district judge did not advise Mr. Mack to contact the court reporter to obtain a transcript. Instead, the judge apparently requested that the oral reasons be transcribed and filed them into the record, where they were available to the parties. Furthermore, we note that the transcribed reasons were filed into the record on November 17, 2005, and Mr. Mack did not file his notice of appeal until December 12, 2005. Therefore, Mr. Mack clearly had an opportunity to review the written reasons prior to perfecting the appeal. Accordingly, we deny the motion to remand.

STANDARD OF REVIEW
The standard of review applied in cases of this nature was set forth by this court in Tanner v. City of Baton Rouge, 422 So.2d 1263 (La.App. 1st Cir.1982), writ denied, 429 So.2d 128 (La.1983). The decision of the Board may not be overturned absent a finding that it is either not supported by substantial and competent evidence, or it is arbitrary, capricious, or an abuse of discretion. See Tanner, 422 So.2d at 1265-66.

DISCUSSION
On appeal, Mr. Mack contends that the district court erred in affirming the Board's decision upholding his termination, asserting that the Board's decision was not supported by substantial evidence. In addition, Mr. Mack contends that he had a legitimate reason to refuse to take the alcohol test, because his immediate supervisor, Mr. Jackson, had advised him that he could leave.
Controlling herein are the drug-free workforce provisions set forth in Ordinance 12268 (the ordinance) of the City of Baton Rouge, Parish of East Baton Rouge (City-Parish). Section 8:5.A. of the ordinance authorizes drug and alcohol testing of City-Parish employees in order to enforce the prohibitions "against drugs and alcohol in the City-Parish workplace." Section 8:2.C. defines "City-Parish Workplace" as any site, building, premises, or other location at which an employee "is performing City-Parish work." Clearly, Mr. Mack was not performing City-Parish work while walking to his vehicle after taking emergency leave and clocking out.
Moreover, the record does not indicate whether all three Board members who voted to uphold Mr. Mack's termination definitively determined whether his "refusal" to submit to the test was expressly stated or simply implied by virtue of his departure. *1011 The comments of at least one of those members indicate his finding that Mr. Mack's refusal was implicitly conveyed by his leaving.
Mr. Mack's termination was based on his violation of Section 8:3.E., which provides as follows:

Refusal to Cooperate. Compliance with this chapter, including participation in drug and alcohol testing, is a condition of continued employment with the City-Parish. Any refusal to submit to a drug test or an alcohol test, or refusal to cooperate with the City-Parish in any of the procedures involved in the drug and alcohol testing provided for by this chapter shall be a violation of this chapter. For purposes of this chapter, refusal shall include not only an express refusal to submit to a drug test or an alcohol test but also any failure to appear for any test, failure to report a serious incident, or any absence or departure from City-Parish work:
1. That occurs without a verified legitimate reason:
a. After the employee learns that he or she is required to submit to the test or tests; or
b. After an occurrence which, under this chapter, could result in the employee being required to submit to a drug test or an alcohol test; or
2. That is determined by the City-Parish to have been a pretext for avoiding the test or tests.
All of the involved parties, including Mr. Phenald, were well aware that Mr. Mack was "off the clock" and leaving to take care of an emergency long before Mr. Phenald made his olfactory observation and thereafter demanded that Mr. Mack submit to a test. Thus, Mr. Mack's departure was obviously for a legitimate reason and not contrived simply as a pretext to avoid testing.
Given the totality of the facts in this case, that Mr. Mack had taken emergency leave and punched out and that following Mr. Phenald's statement regarding a drug test, Mr. Mack's immediate supervisor told him that he could leave, we find that the action of the Board in upholding Mr. Mack's termination constituted an abuse of discretion.

CONCLUSION
Accordingly, the judgment upholding Mr. Mack's termination is reversed and Mr. Mack is hereby ordered reinstated. The Personnel Board of the City of Baton Rouge, Parish of East Baton Rouge is cast with the costs of this appeal in the amount of $476.94.
REVERSED.
PARRO, J., dissents with reasons.
McDONALD, J., dissents.
McCLENDON, J., concurs.
PARRO, J., dissenting.
As the majority has noted, the standard of review in this matter was established in Tanner v. City of Baton Rouge, 422 So.2d 1263 (La.App. 1st Cir.1982), writ denied, 429 So.2d 128 (La.1983). Pursuant to that standard of review, a presumption of regularity must be accorded to the decision of the Board, and the decision of the Board may not be overturned absent a finding that it is either not supported by substantial and competent evidence, or it is arbitrary, capricious, or an abuse of discretion. See Tanner, 422 So.2d at 1265-66. Furthermore, the factual conclusions of the Board, as the trier of fact, are entitled to great weight. See Dumez v. Houma Municipal Fire & Police Civil Service Board, 408 So.2d 403, 405 (La.App. 1st Cir.1981). As the finder of fact that personally observed the witnesses, the *1012 Board's credibility determinations are entitled to great weight. James v. City of Baton Rouge Through Dept. of Public Works, 489 So.2d 1308, 1310 (La.App. 1st Cir.1986).
Section 8:1 of the ordinance establishes that one purpose of the ordinance is to eradicate drug and alcohol abuse and their effects in the City-Parish workplace. As the majority notes, "City-Parish Workplace" is defined in section 8:2(C) as any site, building, premises, or other location at which an employee "is performing City-Parish work." The majority then concludes that Mr. Mack was not performing City-Parish work while walking to his vehicle after taking emergency leave and clocking out. However, it is clear from the record that Mr. Phenald first noticed the smell of alcohol and advised Mr. Mack of the need for an alcohol test before Mr. Mack left to go to his vehicle. In fact, although Mr. Mack had clocked out in preparation for leaving work, he remained at the workplace to participate in a meeting he had requested to discuss work rules and policies with Mr. Phenald and Mr. Jackson. Clearly, Mr. Mack was at the workplace and performing a work-related activity at the time Mr. Phenald made his observation.
Furthermore, the record demonstrates that Mr. Mack was not terminated because he had, in fact, worked or reported to work under the influence of alcohol; rather, he was terminated for refusing to submit to an alcohol test when Mr. Phenald told him he had to do so, under circumstances in which Mr. Phenald had reasonable suspicion that Mr. Mack had consumed alcohol. Pursuant to section 8:3(E) of the ordinance, "refusal" includes not only an express refusal to submit to a drug or alcohol test, but also any failure to appear for any test or a departure from City-Parish work that occurs without a verified legitimate reason. The majority concludes that Mr. Mack did not refuse to submit to the test within the meaning of section 8:3(E) of the ordinance, because he left work that day for a verified legitimate reason. However, there is considerable evidence in the record that Mr. Mack expressly refused to submit to the test.
According to his testimony, Mr. Mack left work that day in order to attend to an emergency involving his son. However, Mr. Phenald, Mr. Jackson, and the other witnesses testified that Mr. Mack did not inform them of any emergency involving his son on the day of the incident. In fact, Mr. Jackson testified that Mr. Mack simply told him he was leaving work because he was not feeling well. Furthermore, Mr. Mack initially denied that Mr. Phenald had ever told him that he needed to take an alcohol test, and he contended he would have submitted to a test if Mr. Phenald had told him to do so, despite the situation with his son. However, he later acknowledged that he had heard Mr. Phenald tell him he had to take the test when he was in the parking lot. Moreover, both Mr. Phenald and Mr. Jackson testified that Mr. Phenald had advised Mr. Mack several times, both inside the building and in the parking lot, that he needed to submit to a test and that Mr. Mack had responded that he did not need to do so because he was not on the clock. In addition, Mr. Mack's wife testified that her husband had told her that he did not believe he had to submit to the test because he was no longer on the clock at the time of the meeting.
The testimony elicited at the hearing provided the Board with two permissible views of the evidence. Clearly, the Board chose to credit the testimony of Mr. Phenald, Mr. Jackson, and Mrs. Mack in this matter, over the testimony of Mr. Mack. Under the standard of review set forth above, this court is bound to give great deference to such credibility decisions. *1013 Based on a thorough review of the record in light of that standard of review, I would affirm the judgment of the district court upholding the Board's decision, because there is substantial evidence to support the Board's decision. Further, I believe that the Board's decision was not arbitrary, capricious, or an abuse of discretion. Accordingly, I respectfully dissent.
NOTES
[1] There is conflicting testimony as to when Mr. Phenald first informed Mr. Mack he had to submit to a drug test. It appears from their comments in the record that a majority of the board members who voted to uphold Mr. Mack's termination based their decision on the fact that Mr. Phenald yelled the command to Mr. Mack while he was proceeding to his vehicle in the parking lot.
[2] At the hearing, Mr. Phenald conceded that Mr. Mack's submission to the test would have required him to punch back in. However, Mr. Mack had already complied with the leave policy and was on emergency leave.