832 So.2d 327 (2002)
Teri Lee BERGERON
v.
David J. CLARK.
No. 02-493.
Court of Appeal of Louisiana, Third Circuit.
October 16, 2002.
Rehearing Denied December 11, 2002.
Writ Denied January 29, 2003.
*328 Sue Fontenot, Abbeville, LA, for Defendant/Appellant, David J. Clark.
Sachida R. Raman, Acadiana Legal Service Corporation, Lafayette, LA, for Plaintiff/Appellee, Teri Lee Bergeron.
Court composed of ULYSSES GENE THIBODEAUX, JOHN D. SAUNDERS, and MARC T. AMY, Judges.
THIBODEAUX, Judge.
In this child custody dispute the father, David J. Clark, appeals the judgment of the trial court denying his "Rule for Change of Custody." The child's parents share joint custody. Her mother, Teri Lee Bergeron, is designated as the domiciliary parent. After a review of the factors listed in La. Civ. Code art. 134, we reverse the judgment of the trial court that Teri should remain the child's domiciliary parent. We grant physical custody of the child to David and designate David as the domiciliary parent, with Teri, the non-custodial parent, having visitation with the child. We remand this matter to the trial court for the purpose of setting specific visitation dates in accordance with this court's judgment.

I.

ISSUE
We shall decide whether the trial court abused its discretion in denying David's rule for change of custody.

II.

FACTS
Teri and David were married in March 1998. Of their marriage one child was born, Cori Lynn Clark, on October 11, 1998. Teri and David separated in March 1999 after Teri filed a protective order against David. Thereafter, David filed for divorce and custody of their minor child, Cori. On April 12, 1999, the parties entered a consent judgment awarding Teri and David joint custody of Cori, designating Teri as the domiciliary parent, and granting visitation to David every other week from Wednesday at 6:00 p.m. and ending Sunday at 6:00 p.m. The consent judgment also ordered that David make all medical decisions with regard to the child. Most importantly the consent judgment provided, with regard to alterations in its terms, that proof of change in the parties' circumstances would not be required.
Although David filed for divorce, the parties maintained their relationship with each other until December 2000. During this time David had ample access to their child. However, on May 23, 2001, David filed a rule to change custody. In his petition, David alleged that during his visitation time with Cori she was often sick and in need of medical attention, and that Teri was inept at obtaining medical care for Cori as well as understanding and following the physician's instructions. He further alleged that Cori suffers from severe constipation because she has infrequent and irregular bowel movements. David asserts that Teri's action of making Cori pick up her own waste and clean her panties when she has an accident is, in part, the reason Cori has bowel movement problems. In essence, David's claim is that Teri is unable to care for Cori properly, and he is better prepared to take care of their daughter.
*329 Teri and David's divorce judgment was signed in favor of David on July 11, 2001. With respect to the custody issue, the trial court ordered that home studies be conducted on the homes of both Teri and David. A hearing on David's rule to change custody was held on January 29, 2002 and on that same day the trial court denied David's rule to change custody. The judgment denying David's rule was signed on February 19, 2002.

III.

LAW AND DISCUSSION

Standard of Review
The standard of review to be employed in cases involving the custody of children was recently set forth by the first circuit in State ex rel. AR, 99-0813 (La.App. 1 Cir. 9/24/99); 754 So.2d 1073, as follows:
In cases involving the custody of children, the trial court is vested with a vast amount of discretion. Bagents v. Bagents, 419 So.2d 460, 462 (La.1982). The trial court is in a better position to evaluate the best interest of a child because of its superior opportunity to observe the parties and the witnesses who testified at the trial. In re State Ex. Rel. Thaxton, 220 So.2d 184, 187 (La.App. 1 Cir.1969). As an appellate court, we must afford great deference to the trial court's decision, not only because of that court's better capacity to evaluate witnesses, but also because of the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973). Thus, the trial court's decision will not be disturbed on review except in the clearest case of abuse of the trial court's great discretion. Bagents, supra.

Id. at 1077-78.
Further, this court stated in Duhon v. Duhon, 01-0731, p. 6 (La.App. 3 Cir. 12/12/01); 801 So.2d 1263, 1267 that:
A court of appeal may not set aside a judge or jury's factual finding unless that finding is manifestly erroneous or clearly wrong. Stobart v. State Through Dep't of Transp. & Dev., 617 So.2d 880 (La.1993). When factual findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard of review demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell, 549 So.2d 840.
However, when a trial court's reasons do not articulate the theory or the evidentiary facts upon which its conclusion is based and the trial court's findings of fact and reasons are not clearly implied by the record, deference is not owed. Bloxom v. Bloxom, 512 So.2d 839 (La.1987). The Bloxom court was presented with a products liability issue where the trial court concluded that a vehicle's catalytic converter was unreasonably dangerous to normal use after it had ignited hay in a barn where it was parked. The Bloxom court noted that deference to a decision of less than ideal clarity is accorded if the trial court's path could reasonably be discerned, such as when its findings, reasons, and exercise of discretion are necessarily and clearly implied by the record. However, the Bloxom court could not extend such deference to the trial court's decision because the trial court merely concluded the catalytic converter was unreasonably dangerous without explanation or support for this determination.
*330 At the conclusion of trial in the present case, the trial court stated:
The Court had a chance during the testimony to review the home study and also the medical records. The Court has heard the testimony of all the witnesses.
The Court has before it a motion by David Clark to change custody and the Court will deny that motion.
The Court feels that it's in the best interest of the children [sic], after hearing all the testimony and a very interesting home study, and the Court feels that it's in the best interest of the children [sic] to keep the visitation schedule and the domiciliary status as it is now presently.
The trial court did not provide written reasons for his judgment. Although the trial court mentioned that it heard "a very interesting home study," it did not reveal the factors in the home study or even which home study (one for each party was conducted for a total of two) it relied upon to come to its conclusion. Further, the trial court failed to mention whether it considered any of the factors listed in La. Civ.Code art. 134, or how the testimony and home study related to the best interest of the child. Moreover, we cannot clearly discern or imply from the record the trial court's reasons for finding that Teri is the better parent and maintaining the status quo with respect to the custody of the child. Thus, we will not accord the trial court's decision the usual deference required by a manifest error standard, and will instead make a de novo review.

Domiciliary Parent
The original divorce decree awarding Teri physical custody, subject to reasonable visitation by David, was not a considered decree where evidence as to parental fitness was received by the trial court. See Oliver v. Oliver, 95-1026 (La. App. 3 Cir. 3/27/96); 671 So.2d 1081. Therefore, David's burden in changing the present custody arrangement is lessened. Normally, he would have to prove that 1) a material change in circumstances has occurred, and 2) that the new custody arrangement would be in the best interest of the child. Id. However, in the present case, the parties agreed that should either parent wish to alter the custody arrangement, the parent requesting the change would not have to prove a change in circumstances. Thus, David's burden lessened even more to proof that having the child live with him is in her best interest. In making decisions regarding custody, the best interests of the child are of paramount importance. La.Civ.Code art. 131. Numerous factors are at the trial court's disposal in making this determination and are set forth in La.Civ.Code art. 134.
Each child custody case must be viewed in light of its own particular set of facts and circumstances with the paramount goal of reaching a decision that is in the best interest of the child. Barberousse v. Barberousse, 556 So.2d 930 (La.App. 3 Cir.1990). We are unable to discern from the record whether the trial court considered any of the best interest of the child factors of La.Civ.Code art. 134; thus, as noted above, we will review this case de novo. Pursuant to La.Civ.Code art. 134, in determining the child's best interest the court shall consider all relevant factors that may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

*331 (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
However, the trial court is not limited to considering the factors enunciated, but should consider the totality of the facts and circumstances in the particular situation. Hawthorne v. Hawthorne, 96-89 (La.App. 3 Cir. 5/22/96); 676 So.2d 619, writ denied, 96-1650 (La.10/25/96); 681 So.2d 365. Determination of the best interest of the child involves the weighing and balancing of factors that favor or oppose awarding custody to the respective competing parents on the basis of the evidence presented in each case. McKinley v. McKinley, 25,365 (La.App.2d Cir.1/19/94); 631 So.2d 45.
The record reveals, with respect to the love, affection, and other emotional ties between Cori and David, that David very much cares about his daughter and that Cori is affectionate toward him. To the contrary, the record further reveals that the discipline, meted out by Teri against Cori for behavior typical of toddlers, is not age-appropriate. As a consequence, it appears that the emotional ties and affection between Teri and Cori are not as strong. Of great concern to this court is the evidence that Ten neglects to take care of Cori's medical needs. Teri relies upon her high school-drop out brother to know how to administer asthmatic medicine to her three year old daughter simply because he, too, is asthmatic. David testified, and the record clearly reveals, that Cori has major problems with constipation, due in part to the manner in which Teri chose to train Cori to use the toilet by making Cori pick up her own feces when she had an accident. Further, the evidence in this case reveals that Cori, in her short life, has been frequently hospitalized due to Teri's neglect of her medical needs. David demonstrated that he was quick to recognize when Cori was ill and to immediately seek the proper medical treatment as well as administer the proper care after her release from the hospital. Further, it appears that David has the greater capacity to provide Cori with food, clothing and other material needs because he is employed full time at Cajun Diesel as a parts manager and has been so employed for three years. To the contrary, Teri is dependent upon child support payments and public assistance to provide for not only Cori, but also her other two children. Thus, we conclude that factor three of La.Civ.Code art. 134 weighs heavily in favor of David.
David testified that his mother and sister have always supported and assisted *332 him in caring for Cori and that their assistance would continue should he gain physical custody of Cori. David also owns his own mobile home in Abbeville. Teri lives in a public housing development where, she admitted at trial, she suspects drug activity occurs. Further, Teri testified that she stays overnight with her boyfriend at his house every chance she gets often bringing the children with her. Thus, with respect to factor number five of La.Civ.Code art. 134, we find that it weighs heavily in favor of David. Likewise, we find that factor six of La.Civ.Code art. 134 favors David. Teri has lived with various men, and is presently in a relationship with a man twice her age with whom she has a sexual relationship and to whom she is not married. Gene Hanks, her boyfriend, has not indicated that he will be marrying Teri. She has taken her children to his house and allowed him to discipline her children. Further, she has maintained a relationship with a convict, Joey, a former male friend, by writing letters to him. In one of her letters she discussed plans for killing another woman. It is unclear whether this letter expressed concerns about the convict's poetry in which he may have expressed such a desire or whether she herself actually intended such an act. At any rate, the fact that the matter was discussed causes us some discomfort.
There is no similar evidence regarding the morals of David. With respect to the mental and physical health of Teri and David, Teri admits that she has mental problems and is taking medication. However, she does not always take her medication properly. With respect to the mental health of David, the record reveals that he may have problems controlling his temper; however, it appears that David's lack of temper control is associated with his interactions with Teri and her failure to properly care for their child. As far as physical health, it appears from the record that both parties are in good physical condition. Thus, factor number seven weighs in favor of David.
Cori lives with her two older half-brothers and her fourteen-year-old uncle, Teri's younger brother. Teri also testified that the children have a room at her boyfriend's house. David's only child is Cori. During visitation with David, Cori stayed in David's mother's home where Cori has her own bedroom. David works only about one hundred yards from his mother's home and often ate lunch with Cori at his mother's home. David's sister, Darla Castille, who is also Cori's godmother, lives fifty yards from the shop where David works. Darla testified that she helps both Teri and David care for Cori. David's mother, Beverly Clark, takes care of Cori while David is at work. Beverly testified that whenever David gets off of work, he takes over Cori's care completely. The record indicates that David would have the same help from his sister and his mother should he be named Cori's domiciliary parent. We have reviewed the studies of the homes of Teri and David. Although David's home study revealed that he had been convicted of simple battery, operating a vehicle while intoxicated and obstruction of a highway, these convictions occurred in the late 1980s. David's home study also reveals that on August 20, 1999, David was arrested for simple battery; however, disposition on that charge was not listed. We find that with respect to the homes of David and Teri, the home studies do not show one parent's home to be remarkably better than the other parent's home. Thus, we find that the home studies are not helpful in weighing factor number eight of La.Civ.Code art. 134 in favor of one party over the other. With David, Cori will be cared for by her grandmother and aunt/godmother and she will have her own room. The record also *333 reveals that Teri does not properly supervise or discipline Cori. Therefore, we find that factor eight weighs in favor of David.
Due to Cori's tender age, we find that Cori's preference is not applicable. It appears that both parents are willing to facilitate and encourage a close relationship between Cori and each parent. Thus, factor number ten of La.Civ.Code art. 134 is equally weighted as to both Teri and David. Further, the distance between Abbeville, Louisiana where David lives, and Crowley, Louisiana, where Teri lives, is not so great that a substantial visitation time with either parent would be prevented. Therefore, factor eleven is inconsequential to a determination of custody. The record reveals that although Teri had domiciliary custody of Cori, with David exercising visitation, David exercised most of the care and responsibility for Cori especially as it concerned Cori's health care. Teri relied upon her teenaged brother to administer Cori's asthma treatments, did not promptly seek medical care when needed, and was unsure of the type of medicine to use for a particular illness. David, on the other hand, made sure Cori was seen by medical professionals, often faced with having his young daughter hospitalized due to Teri's failure to recognize that Cori was ill. A child's health is of utmost importance. Thus, we weigh the last factor, number twelve of La.Civ.Code art. 134, heavily in favor of David.
We are not bound to give more weight to one factor over another; and, when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Derbigny v. Derbigny, 34,672 (La.App. 2 Cir. 4/6/01); 785 So.2d 989. Since the majority of factors listed in La.Civ.Code art. 134 favored David, we find that the trial court's decision that it is in Cori's best interest that Teri be maintained as the domiciliary parent is in error and will, therefore, be reversed.

IV.

CONCLUSION
For the forgoing reasons, we affirm the judgment of the trial court insofar as it orders that the parents have joint custody of the child. Because we find that granting the mother domiciliary custody is not in the best interest of the child, we order that the father have physical custody of the child and be named as the domiciliary parent, with the mother having substantial time with the child. Therefore, we remand the case to the trial court to establish a meaningful plan of joint custody, which provides for frequent and continuing contact with the non-domiciliary parent and for setting specific visitation dates and parental authority. The Code requires a joint custody implementation plan, and the jurisprudence has interpreted this to mean a plan providing substantial, while not always equal, physical custody for the non-domiciliary parent. The hearing on this matter is to be held within sixty days from the date that this opinion becomes final.
Costs of this appeal shall be shared equally between the parties, Teri Lee Bergeron and David J. Clark.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.