# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-604


**DANIEL PRATHER**

**VERSUS**

**MERCEDES MCLAUGHLIN**


**********

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 23717
HONORABLE WARREN DANIEL WILLETT, DISTRICT JUDGE

**********

**JOHN E. CONERY**
**JUDGE**

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, and John E. Conery, Judges.


**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

**Lauren Gay Coleman**
**Attorney at Law**
**2011 MacArthur Drive**
**Alexandria, Louisiana  71301**
**(318) 449-9857**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Mercedes McLaughlin**

**Katharine Geary**
**Attorney at Law**
**3327D Jackson Street**
**Alexandria, Louisiana  71301**
**(318) 445-1076**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Daniel Prather**

**CONERY, Judge.**

Defendant, Mercedes McLaughlin, gave birth to a male child at twenty-six weeks gestation in March 2015. Plaintiff, Daniel Prather, had been in a relationship with Ms. McLaughlin and claimed that the child was his. Ms. McLaughlin first denied that he was the father, but four months later, in July 2015, DNA testing showed that Mr. Prather was likely the father. Ms. McLaughlin and Mr. Prather, who are not and have never been married, then entered into a joint stipulation recognizing Mr. Prather as the father and stipulating that the parents share joint custody of the child with Mr. Prather designated as domiciliary parent. Ms. McLaughlin was to have physical custody two days a week, alternating holidays, as well as any other time agreed to by the parties as set forth in the written judgment of the court rendered on July 7, 2015, in accordance with the "stipulation" of the parties.

On February 16, 2016, Ms. McLaughlin filed a motion to modify the stipulated judgment of joint custody. After a trial on the merits, the trial court found no material change in circumstance, but found that a modification in Ms. McLaughlin's custodial times in the joint custody implementation plan would be in the best interest of the child. Daniel Prather, the father of the child, appealed the judgment of the trial court alleging that Ms. McLaughlin failed to meet the burden of proof for modifying a stipulated custody judgment and requested that we reinstate the original terms of the stipulated joint custody plan. For the following reasons, we affirm and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

At the time of the stipulation entered into with Mr. Prather, Ms. McLaughlin was only twenty-one years old, was not represented by counsel, and was being

treated for postpartum depression. The child was only four months old and had respiratory problems.[1] Mr. Prather was living with his mother, who was able to help care for the infant.

In November 2015, Mr. Prather filed a motion for contempt alleging that Ms. McLaughlin was keeping the child longer than the allotted times in the stipulated judgment. He also claimed that she was not providing the child with adequate nourishment. After a hearing on January 5, 2016, the trial court held Ms. McLaughlin in contempt and ruled that the "parent who is to receive custody of the child is to pick up the child at the other parent's residence at the dates and times specified in the order. Law enforcement is authorized to effectuate the exchange of custody."

On February 16, 2016, Ms. McLaughlin then filed a motion to modify custody. She sought additional custodial time with the child and asked to be named domiciliary parent. She alleged that Mr. Prather failed to properly care for the child. She claimed that when she would retrieve the child, he was covered in insect bites, as confirmed by the photos she introduced into evidence, and was exposed to cigarette smoke, despite Mr. Prather being repeatedly warned to keep the child away from cigarette smoke due to the child's prematurity and lung condition. She also claimed that the child was "nasty," which she explained to mean "dirty[,]" when he was brought to her on most visits. She introduced photos of the child showing welts on his head from the insect bites and photos showing the child had dirt under his fingernails and between his toes, and was generally dirty.

---

[1]A hospital discharge summary for the child warned that he should not be exposed to cigarette smoke.

At trial on the merits on March 8, 2016, Mr. Prather testified that he had taken the child to the doctor for the insect bites, that he had stopped smoking, and that his mother was trying to quit smoking. He denied that the child was "dirty" when brought to Ms. McLaughlin.

After hearing testimony from the parties, and reviewing photos and exhibits, the trial court maintained joint custody, but modified the custodial times for each parent that had been stipulated in the prior consent judgment between the parties. In an April 18, 2016 judgment, the trial court ordered the parties to exchange the child on a weekly basis going forward. Ms. McLaughlin was awarded Mother's Day, and Mr. Prather was awarded Father's Day. Thanksgiving, Christmas, and Easter would be split into alternating pre and post periods, as set forth in the joint custody implementation plan. The trial court found modification of the custodial times of each parent was in the best interest of the child. Mr. Prather appealed. No designation of domiciliary parent was made in the judgment.

## ASSIGNMENTS OF ERROR

On appeal, Mr. Prather asserts the following as error:

     1.    The [t]rial [c]ourt modified the prior custody judgment although it found that the mover did not meet her burden of proof.

     2.    The [t]rial [c]ourt did not correctly state the burden of proof.

## DISCUSSION

The standard of review for the appellate court in child custody cases has been well-established by this court, as stated in *Hawthorne v. Hawthorne*, 96-89, p. 12 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied*, 96-1650 (La.10/25/96), 681 So.2d 365, "The trial court is in a better position to evaluate the best interest of the child from its observances of the parties and witnesses; thus, a

trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion." Further, "[e]ach child custody case must be viewed in light of its own particular set of facts and circumstances with the paramount goal of reaching a decision that is in the best interest of the child." *Bergeron v. Clark*, 02-493, p. 5 (La.App. 3 Cir. 10/16/02), 832 So.2d 327, 330, *writ denied*, 03-134 (La. 1/29/03), 836 So.2d 54. *See also Evans v. Lungrin*, 97-541 (La. 2/6/98), 708 So.2d 731.

The supreme court recently reiterated the overriding importance of placing the best interest of the child first in evaluating custody disputes in *Tracie F. v. Francisco D.*, 15-1812, p. 2 (La. 3/15/16), 188 So.3d 231, 235, stating, "we hold that the overarching inquiry in an action to change custody is 'the best interest of the child.'" In *Tracie F.*, 188 So.3d at 239-40, the supreme court further explained the burden of proof applicable to considered decrees and stipulated judgments, stating:

> This court has recognized that different burdens of proof apply to each of the two types of custody awards. "[T]he jurisprudential requirements of *Bergeron v. Bergeron*[, 492 So.2d 1193 (La. 1986)] . . . are applied to actions to change custody rendered in considered decrees." *AEB* [*v. JBE*, 99-2668, p. 7 (La. 11/30/99), 752 So.2d 756,] 761. That is, "the proponent of change must show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody." *AEB*, [752 So.2d at 761] (citing *Bergeron*, 492 So.2d at 1195). Additionally, for considered decrees, "[t]he party seeking a change 'bears the heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.' " *AEB*, [752 So.2d at 761] (quoting *Bergeron*, 492 So.2d at at 1200).
>
> In contrast to considered decrees, "where the original custody decree is a *stipulated judgment*, the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed

modification is in the best interest of the child." *Evans*, [708 So.2d] at 738.

The legislature has clearly spoken on this issue. Louisiana Civil Code Article 131 provides, "In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child."

In determining how much time the child is to spend with each parent, the legislature has also set forth in clear terms that, "[t]o the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally." La.R.S. 9:335(A)(2)(b).

Hence, the starting point of our analysis is the legislative pronouncements that the courts must first and foremost consider what is in the best interest of the child, with a strong legislative preference for shared custody on an equal basis unless otherwise indicated by the evidence.

However, in order to achieve stability and avoid continuous litigation, our courts, as discussed in *Tracie F.*, have also added an additional condition on a parent who wishes to modify a prior stipulated joint custody decree—proof that there has been a material change in circumstance since the last decree warranting a change in custody that the court finds is in the best interest of the child.

Some courts have held that for a material change of circumstances to be "sufficient to alter the custody plan . . . the material change of circumstances 'must be of a substantial and continuing nature to make the terms of the initial decree unreasonable.'" *Tarver v. Tarver*, 15-219 (La.App. 3 Cir. 10/7/15) (unpublished opinion) (citing LINDA D. ELROD, CHILD CUSTODY PRACTICE AND PROCEDURE § 17:4 (database updated 2015)).

5

In *Tracie F.*, 188 So.3d 231, the supreme court found the father proved a material change in circumstances based on the father's heightened involvement in the child's life as well as the expressed preference of the ten-year-old child. The court went on to find that a change in custody was not warranted as it was not in the child's best interest.

In the instant case, Ms. McLaughlin argued to the trial court and on appeal that a modification of "custody" would be in the best interest of the child. She requested that she be named primary domiciliary parent and that the child spend most of the time with her, with Mr. Prather to have visitation. She testified that she is now mentally stable, is taking medication for her postpartum depression, and is in a much better place than she was when she first agreed, without benefit of counsel, to the stipulated joint custody implementation plan shortly after the child had been released from the neonatal intensive care unit.

She also claims that Mr. Prather does not attempt to notify her when the child has medical problems, such as the insect bites and respiratory problems requiring doctor and hospital visits. He likewise does not provide information to her regarding the Early Step Program visits, and does not transfer sufficient food for the child to her home. In short, Mr. Prather does not attempt to communicate with her or work with her in the child's best interest. In addition, Ms. McLaughlin has a three-year-old son who lives with her, and she believes that the two children benefit from each other's company.

Ms. McLaughlin further testified that the current custody plan is not in the best interest of the child and is detrimental to the child's health. While Mr. Prather claims he has quit smoking, he lives with his mother, and she admittedly still smokes, as corroborated by photos of full ashtrays. Because of the child's

prematurity and underdeveloped lungs, Ms. McLaughlin claims that the presence of cigarette smoke is especially detrimental to the child, and there is little likelihood that Mr. Prather's mother would quit smoking. Mr. Prather has not attempted to find gainful full-time employment such as would allow him to have his own home for the child away from cigarette smoke.

Further, Ms. McLaughlin testified that on several occasions the child has arrived for his custodial time with her covered in bug bites, thus evidencing that the child was not being properly cared for. She also claims that the child was consistently brought to her dirty, not having been bathed and clothed properly. She further claimed that while an infant, the child had been left out in the hot July sun, which was against the recommendation of the doctors' orders issued on the child's discharge from the hospital.

In response, Mr. Prather claimed that Ms. McLaughlin failed to prove a material change in circumstance. He testified that he had quit smoking and that his mother was attempting to quit smoking, but that he could not force her to. He claimed that he had taken the child to the doctor for the bug bites and that they were not serious. Mr. Prather stated that while he admitted that Ms. McLaughlin was a good mother, he did not think that a modification of custody was warranted.

The trial court ruled in favor of Ms. McLaughlin, stating:

> I don't think it is any secret that there is a Consent Judgment, that the standard for modifying that Consent Judgment is that there be a change in - - a material change in circumstances and that those circumstances warrant a modification of the Custody Order uh, for the best interest of the child.
>
> . . . .
>
> [D]o the issues presented in today's hearing constitute a material change in circumstances? I would say, no. However, . . . do I think [that] the Consent Judgment these parties entered into in July, is that

7

in the best interest of this child?  Absolutely not.  So, I mean, is this court bound by an evidentiary burden that was created four (4) months after the birth of a premature child and . . . the child is not even a year old yet. . . . I don't think that is what the Legislature or the court have intended - - for me to be bound to by [sic] a Consent Judgment that these . . . young adults entered into when the child was four (4) months old and . . . I will go through the factors, I think the record is very clear that the child only spending two (2) days a week with his mother is not in the best interest of the child. Um, so I . . . just want that clear for the record, I understand that - - the 3rd Circuit may disagree but I want them to understand why I think that there is a modification of the custody arrangement warranted under these circumstances.

I -- I am not convinced that the evidence that Ms. McLaughlin has presented constitutes a material change but I think . . . that both parties' testimony is fairly consistent that what they are doing right now is not in the child's best interest.

As the supreme court held in *Evans*, to modify a stipulated custody judgment, the mover must prove a material change in circumstance and that the modification is in the best interest of the child.  *See Evans*, 708 So.2d 731.  The heavy burden enunciated in *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986), does not apply.

The trial court specifically relied on that which is the paramount consideration in child custody cases, the best interest of the child as set forth in La.Civ.Code art. 131.  In finding the evidence sufficient to modify the stipulated judgment under the peculiar facts of this case, the trial court analyzed all the factors enumerated in La.Civ.Code art. 134, as set forth by the legislature and interpreted by our jurisprudence.  The trial court discussed the evidence as it may pertain to each factor in La.Civ.Code art. 134 and concluded that a change in joint custodial times was warranted under the peculiar facts of this case.

While it can be argued that Ms. McLaughlin did not prove a material change in circumstances, as the trial court found, the real question at issue is whether the custodial time periods exercised by each parent under the stipulated joint custody

plan should be modified to give this young mother additional time with her child. The trial court, based on comprehensive reasons, found that the evidence strongly favored an expansion of Ms. McLaughlin's custodial time under the joint custody plan.

Though not essential to a decision in this case, we disagree in part with the trial court and find that the evidence, when viewed as a whole, does support a finding that Ms. McLaughlin has proved a material change in circumstances. The peculiar facts of this case show that the stipulation by Ms. McLaughlin was entered when she was not in good health, she was not represented by counsel, and the child was only four months old, having just been discharged from the neonatal intensive care unit. Ms. McLaughlin's health and ability to care for the child has been shown to have markedly improved. Therefore, Ms. McLaughlin is in a better position to have greater periods of physical custody.

Moreover, the child is now over one-year-old, and the trial court specifically found that the best interest of the child required an equal sharing of custody, as contemplated by the legislature when it enacted La.R.S. 9:335, which provided that physical custody of the child should be shared equally between the parents to the extent possible. *See* La.R.S. 9:335(A)(2)(b). *See Evans*, 708 So.2d 731. Under the unique and peculiar facts of this case, we find that the evidence supports a finding that Ms. McLaughlin has proven a material change in circumstances.

More importantly, we agree with the ultimate decision by the trial court that a modification in custodial times under the joint custody plan would be in the best interest of the child in this case. Under the stipulated joint custody plan, the child spent only two days per week with Ms. McLaughlin. The evidence fully supports

9

the trial court's finding that an increase of custodial time with Ms. McLaughlin would be in the best interest of the child, and we affirm its well-reasoned decision.

As noted previously, however, the trial court did not designate a domiciliary parent. In her petition, Ms. McLaughlin had asked that she be named the domiciliary parent. Mr. Prather had been named the domiciliary parent in the November 2015 consent judgment. The record is unclear as to whether the trial court intended to maintain Mr. Prather as the domiciliary parent, or name Ms. McLaughlin.

In *Evans*, 708 So.2d at 737-78, the supreme court explained:

[Louisiana Revised Statutes] 9:335(B)(1) provides:

"In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown."

The domiciliary parent has the authority to make all decisions affecting the child unless an implementation order otherwise provides. La. R.S. 9:335(B)(3).

. . . .

Notwithstanding the domiciliary parent's right to make all decisions affecting the child however, Act 261 nevertheless obligates the parents to *exchange information* concerning the health, education, and welfare of the child and to *confer with one another* in exercising decision-making authority. *See La. R.S. 9:336.* Moreover, in instances where the requirements for not designating a domiciliary parent are met, Title VII of Book I of the Civil Code governs the rights and responsibilities of parents with joint *legal custody*. *La. R.S. 9:335(C)* states the following:

"If a domiciliary parent is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code."

10

More recently, in *Hodges v. Hodges*, 15-585 (La. 11/23/15), 181 So.3d 700, the supreme court thoroughly reviewed the jurisprudence on whether a domiciliary parent must be named. Said the court:

> Read as a whole, therefore, we conclude the plain language of La. R.S. 9:335 manifests the legislature's clear intent to establish a custodial system in which a child has a domiciliary parent and no more than one such parent. The text is clear. Although each parent can share physical custody, the court can only designate a single domiciliary parent. See La. R.S. 9:335(A)(2)(b) and (B)(1); see also Evans, 97-0541 at 11, 708 So.2d at 737 (Noting that before enactment of La. R.S. 9:335, the concept of joint legal custody "involved a sharing of the responsibilities concerning the child including decisions about education, medical care, discipline and other matters relating to the upbringing of the child," but "[w]ith the enactment of Act 261 [including La. R.S. 9:335] ..., the decision-making rules have changed. Presently, when parties are awarded joint custody, the court must designate a domiciliary parent unless the implementation order provides otherwise, or for other good cause shown."). The appellate court, therefore, erred in holding there can be more than one parent designated as a domiciliary parent.

*Id.* at 706. Therefore, we remand this case to the trial court for consideration of this issue. *See Id.*

## DISPOSITION

After a thorough review of the facts and law in this case, we affirm the April 18, 2016 judgment of the trial court granting Mercedes McLaughlin an increase in physical custody of the child and remand to the trial court for a determination of whether a domiciliary parent should be named consistent with La.R.S. 9:335(B)(1) and the views expressed in this opinion. All costs of this appeal are assessed against Daniel Prather.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

11