# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-983


DARETH CHAMPLIN DELHOSTE

VERSUS

ROBIN G. DELHOSTE


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CATAHOULA, NO. 27,341
HONORABLE JOHN C. REEVES, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## PHYLLIS M. KEATY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and D. Kent Savoie, Judges.


**AFFIRMED.**

**Brandy McClure**
**Attorney at Law**
**Post Office Box 665**
**Jonesville, Louisiana 71343**
**(318) 339-7337**
**Counsel for Plaintiff/Appellee:**
        **Dareth Champlin Delhoste (mother)**

**James R. Boyd**
**Attorney at Law**
**Post Office Drawer 1464**
**Ferriday, Louisiana 71334**
**(318) 757-3000**
**Counsel for Defendant/Appellant:**
        **Robin G. Delhoste (father)**

**KEATY, Judge.**

Defendant/Appellant, Robin G. Delhoste, appeals the trial court's judgment denying his Rule for Contempt, Change of Custody, and Change in Visitation. For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

Robin G. Delhoste (hereinafter "the father") married Plaintiff/Appellee, Dareth Champlin Delhoste (hereinafter "the mother"), in 1999. Four children were born of the marriage: Chloe Amanda Delhoste, born June 12, 2000; Peyton Edward Delhoste, born April 2, 2004; Sawyer Champlin Delhoste, born April 2, 2004; and Mollie Pearl Delhoste, born April 27, 2007. On April 21, 2014, the couple divorced. A Stipulated Judgment entered into between the parties, rendered on January 6, 2014, and signed by the trial court on January 21, 2014, granted the mother sole custody of the children. The father was granted visitation with the three younger children "every other Saturday and Sunday, during the day." He was granted visitation with the oldest child, Chloe, "based on the recommendation of the minor child's counselor."

There have been multiple filings in this matter. At issue herein is the father's Rule for Contempt, Change of Custody, and Change in Visitation, which he filed on October 30, 2015. Therein, he asked for visitation every other weekend, from 6:00 p.m. on Friday until 6:00 p.m. on Sunday. He asked to "be allowed to visit with the children one (1) weeknight from after school until 8:00pm [sic] on the weeks where he does not exercise his weekend visitation." He sought custody of Chloe, with weekend visitation in favor of the mother. The father asked the trial court to hold the mother in contempt of court for violating various court orders and stipulations.

The rule was heard on January 7, 2016. After taking testimony, the trial court took the matter under advisement and gave the parties time to file rebuttal briefs. The trial court instructed the mother to provide all medical records pertaining to Chloe's mental health, including those from the Office of Community Services (OCS) and Darla Gilbert, Chloe's mental health counselor. On April 5, 2016, the trial court rendered and signed a judgment denying all provisions of the father's rule. It ordered the provisions of the Stipulated Judgment remain in full force and effect. The father appealed.

On appeal, the father asserts the following assignments of error:

1. The trial court clearly erred in not finding a change of material circumstance necessary to change custody relating to the minor child, Chloe Delhoste.

2. The trial court clearly erred by [not] finding that a change of custody and increase in visitation was in the best interest of the minor children.

3. The trial court clearly erred by not finding Defendant-in Rule/Appellee, Dareth Champlin Delhoste, in contempt of court.

## STANDARD OF REVIEW

An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). In child custody disputes, "'[t]he trial judge is in a better position to evaluate the best interest of a child from his observance of the parties and the witnesses and his decision will not be disturbed on review absent a clear showing of abuse.'" *Deason v. Deason*, 99-1811, p. 2 (La.App. 3 Cir. 4/5/00), 759 So.2d 219, 220 (quoting *State in the Interest of Sylvester*, 525 So.2d 604, 608 (La.App. 3 Cir. 1988)). The primary consideration and prevailing inquiry is whether the custody arrangement is in the

best interest of the child. *Evans v. Lungrin*, 97-541, 97-577 (La. 2/6/98), 708 So.2d 731.

**DISCUSSION**

**I.      Material Change of Circumstances**

In his first assignment of error, the father contends the trial court erred in not finding a change of material circumstance necessary to change custody regarding Chloe. In his second assignment of error, the father alleges the trial court erred by not finding a change of custody and increase in visitation was in the children's best interest. Given the overlapping assignments, we will discuss the trial court's factual findings supporting its conclusion that there was no material change of circumstances which would warrant modification of the custody arrangement as it relates to all four children.

The custody arrangement at issue resulted from a Stipulated Judgment. In order to modify custody, the father must prove, "'(1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child.'" *Tracie F. v. Francisco D.*, 15-1812, p. 10 (La. 3/15/16), 188 So.3d 231, 239-40 (quoting *Evans*, 708 So.2d at 738). In *Prather v. McLaughlin*, 16-604, p. 5 (La.App. 3 Cir. 11/2/16), 207 So.3d 581, 585, this court noted:

> Some courts have held that for a material change of circumstances to be "sufficient to alter the custody plan . . . the material change of circumstances 'must be of a substantial and continuing nature to make the terms of the initial decree unreasonable.'" *Tarver v. Tarver*, 15-219 (La.App. 3 Cir. 10/7/15) (unpublished opinion) (citing LINDA D. ELROD, CHILD CUSTODY PRACTICE AND PROCEDURE § 17:4 (database updated 2015)).

In his rule for modification, the father argued a material change in circumstances occurred because the parties cannot agree as to the time in which he can exercise visitation and that discussions regarding visitation have become "contemptuous." The father noted Chloe was admitted to an inpatient mental health facility by her mother on June 5, 2015, and "that he was not informed of this hospitalization or any current health problems until his daughter was already admitted into the facility." The father noted other situations wherein the mother allegedly failed to contact him regarding "important medical conditions involving the children." He noted the mother "exchanges information with him by having one of the minor children contact him about important dates and events." He stated the mother "has punished the minor children when they have informed him of events going on in their lives." However, when asked at the hearing to state the material circumstances which had occurred in order to warrant modification, the father responded: "I made a mistake." He explained: "I'm not the same person I was then. I'm not grieving over my marriage and everything, loosing [sic] -- I've moved on with my life and I want my kids to be part of my life."

Nevertheless, with respect to visitation, the Stipulated Judgment grants the father "every other Saturday and Sunday, during the day." At the hearing, the father argued visitation was interrupted during an LSU football game which occurred on a Saturday wherein Chloe was given the opportunity to cheer. He said the problem arose following the game when the mother allegedly did not allow Chloe to ride with him back home to Jonesville because it was "unhealthy." On cross-examination, however, the father admitted that he and the other children went to the football game that day and he was able to see all of his children. In that regard, the mother testified that the father had "exercised his visitation earlier;

4

it ended at 6 that afternoon." The father testified another incident occurred where he allowed Chloe to attend a movie with her mother during his weekend. On cross-examination, however, he admitted that the mother subsequently and during her scheduled time with the children allowed him to "meet Chloe at the movie theater and sit in the movie with her."

The mother further testified that the father's weekend visitation normally occurred on Saturdays, from 8:00 a.m. to 6:00 p.m., and on Sundays, from after church to 5:30 p.m. The mother stated that the arrangement was working out fine and that she often gave the father extra time with the children by revealing: "He has called and asked or texted for extra time. The kids have asked if they could get extra time[,] and then I let them set that up." The foregoing testimony contained in the transcript of the hearing indicates that the father exercised visitation pursuant to the Stipulated Judgment.

With respect to Chloe's medical issues, the father testified that he was not informed prior to Chloe being admitted to an inpatient mental health facility on June 5, 2015. According to his testimony, the mother called him after Chloe was admitted and explained that "it happened late the night before, that everything got worked out and that they brought her down there that morning[]" to be committed. At the hearing, the mother testified that the hospitalization occurred because Chloe was exchanging inappropriate pictures with an eighteen-year-old person. The mother revealed that after discussing the texting incident with Chloe's counselor, Ms. Gilbert, another healthcare provider, and an investigator, they concluded Chloe was in imminent danger. The mother's testimony indicates she was advised by "the professionals and doctors" not to tell anybody that Chloe was going to be committed prior to her admittance in order to facilitate a smooth transition into the

5

psychiatric hospital. The mother stated that she made an informed decision when seeking treatment for Chloe.

Ms. Gilbert, a licensed professional counselor specializing in mental health, marriage and family therapy, was accepted at the hearing as the mother's expert witness. Ms. Gilbert testified that she had been treating Chloe, who was diagnosed as bi-polar, for approximately four years. Ms. Gilbert testified that she recommended Chloe be hospitalized in the New Orleans inpatient mental facility because Chloe "was a danger to herself because of her erratic and acceleratingly dangerous behavior." Ms. Gilbert considered Chloe a flight risk and was concerned that she would run when addressed about her behavior.

The mother stated that she discusses issues with the father regarding the children although she occasionally gets "so wrapped up in parenting four kids that [she] forget[s] to let him know something." She revealed the children "enjoy telling him what's going on in their life. I don't stop that." She indicated that Chloe is fifteen years old, the boys are eleven years old, and Molly is eight years old. She stated that the children communicate with their father via telephone.

With respect to the children's health and safety in general, the father testified that the mother and children were involved in a minor automobile accident. He said no one sustained injuries and that he was informed of the accident from one of his children. The father testified that he should have learned of the accident immediately from the mother to ensure that his children were safe. In response, the mother testified that, "[i]t's kind of hard to let him know when I'm outside talking to the cop writing me the ticket and Chloe's on the phone with him. So I can't be the first person in that case." When asked whether the mother keeps him

informed regarding the children, the father responded: "She has recently in the past month, yes. Things have been better."

Finally, the father alleged in the rule for modification that the mother punished the children when they informed him of events in their lives. At the hearing, he stated: "I believe that Chloe is punished. I do not really believe the other three are." The father testified the mother took away Chloe's cell phone following an incident which occurred over the holidays when Chloe was working. The father explained that he picked up Chloe, brought her to lunch, and returned her to work, which encompassed approximately thirty minutes. He believes Chloe was punished by the mother for having lunch with him by having her cellular phone taken away, resulting in his inability to reach her for three days. On cross-examination, however, he admitted the foregoing testimony was based on his conversations with Chloe and not on personal experience. Notably, he stated: "I'm not [at their house] so . . . I do not have personal experience."

On the other hand, the mother testified that Chloe was not punished for having lunch with the father. The mother stated that she previously told Chloe not to leave work as she "was still responsible for" her. The mother indicated she took Chloe's phone away for breaking that rule.

Based on the above testimony and evidence, we find that the father's alleged material change of circumstances is not substantial and continuing in nature to make the terms of the Stipulated Judgment unreasonable. Accordingly, the trial court did not abuse its discretion in this regard.

## II. Best Interest of the Child

In his second assignment of error, the father contends the trial court erred by not finding that an increase in visitation was in the children's best interest. To

determine whether a modification of visitation was in the children's best interests, the trial court considered the following relevant factors listed in La.Civ.Code art. 134, including "[t]he love, affection, and other emotional ties between each party and the child[,]" La.Civ.Code art. 134(1); "[t]he capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child[,]" La.Civ.Code art. 134(2); "[t]he length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment[,]" La.Civ.Code art. 134(4); "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes[,]" La.Civ.Code art. 134(5); "[t]he moral fitness of each party, insofar as it affects the welfare of the child[,]" La.Civ.Code art. 134(6); and "[t]he mental and physical health of each party[,]" La.Civ.Code art. 134(7).

In that regard, the mother testified that she maintains "a healthy motherly relationship with the children." She revealed that she gives the children love, affection, and spiritual growth, noting they attend church with her every Sunday. She indicated the children have lived with her in her current home since Chloe was approximately two years old. She testified that the children regularly attend school where she transports them every day. The mother stated that she is mentally and physically able to care for the children. She noted that she has also been the children's primary caretaker since their birth.

The mother agreed that she is willing to facilitate, encourage, and foster the relationship between the children and their father. She testified that the father, however, fails to discuss issues with her concerning Chloe or the other children. In that regard, the father testified that communication between the parents is important, although he does not communicate with the mother. He contradicted

himself by also testifying that he has communicated with the mother. The father indicated the mother "does not want to communicate with" him. We note there is no obligation on a sole custodian to confer with the other parent about anything. Robert C. Lowe, 1 LA. PRAC. DIVORCE § 7:62. Regardless, the trial court indicated its concern regarding the lack of communication between the parents with respect to the children. We find that the transcript supports the trial court's conclusion.

The third factor addresses "[t]he capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs." La.Civ.Code art. 134(3). The twelfth factor addresses "[t]he responsibility for the care and rearing of the child previously exercised by each party." La.Civ.Code art. 134(12). With respect to this issue, the transcript shows the father's failure to financially care for the children given his acknowledgement of a September 30, 2015 judgment ordering him to pay the mother $22,478.00, which included money owed for past-due child support. The mother's testimony also shows that she provides food, clothing, medical care, and other material needs of the children, including Chloe. At the hearing, the father was unable to provide the names of Chloe's medications despite his testimony that it is important to know the identity of his children's medication. When asked whether he knew what Chloe was diagnosed with, he responded, "No."

In that regard, Ms. Gilbert agreed it was important for the parent retaining physical custody of Chloe to be aware of her diagnosis and have constant communication with her physicians. Ms. Gilbert noted the father contacted her only two times over a four-year period regarding Chloe's mental health. Ms. Gilbert expressed concern if Chloe would live with her father because he treats Chloe like a spouse or peer and is "emotionally dependent" on her. Ms. Gilbert

9

said such a relationship is unhealthy because a father "should not rely on his daughter. Daughters should be able to rely on her father, be protected by her father, not the other way around." Ms. Gilbert noted that Chloe "has a history of very serious dangerous behavior and some of it is sexual in nature. She has to be very, very closely monitored because there have been episodes that are quite severe." Ms. Gilbert said Chloe's mental disorder requires strict boundaries, which the mother maintained. On the other hand, Ms. Gilbert was unsure whether the father implemented strict boundaries and opined that Chloe "will not maintain stability" if her father is given custody. Ms. Gilbert testified that maintaining custody in favor of the mother is "critical for Chloe's welfare[.]"

The ninth factor notes "[t]he reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference." La.Civ.Code art. 134(9). The father testified that Chloe's preference was to live with him. On the other hand, the mother testified that Chloe's preference was to remain living at home, in the mother's custody, as long as things would "be different." The mother explained Chloe wanted things to change at home because "she hates to do her laundry and she hates to do certain chores but as a 15 year old she needs those." There is nothing in the transcript indicating the trial court specifically addressed the relevancy of this factor. Although a child's age and preference is taken into consideration, we find this factor is not relevant given Chloe's immaturity based upon Ms. Gilbert's testimony regarding Chloe's erratic behavior.

Based on the above, the trial court determined that a modification of visitation was not in the children's best interest. Considering the record as a whole, we cannot say that the trial court abused its discretion in this regard.

10

## III. <u>Rule for Contempt</u>

In his third assignment of error, the father contends the trial court erred by not holding the mother in contempt for failing to abide by the Stipulated Judgment which requires the parents to inform each other regarding the children's health and education. The father alleges the mother violated the judgment by failing to inform him of an automobile accident and by placing Chloe in an inpatient psychiatric institution without his knowledge. We have previously addressed these alleged violations. The father also asserts the mother violated the visitation provision in the Stipulated Judgment by not allowing the children to spend all day Sunday with him because she does not trust him to take them to church.

Constructive contempt is defined as the "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court[.]" La.Code Civ.P. art. 224(2). In this case, the Stipulated Judgment executed by the trial court on January 21, 2014, failed to specify an exact time for weekend visitation; it only specified visitation "every other Saturday and Sunday, during the day." The testimony indicates the father exercised weekend visitation in accordance with that judgment. Approximately two years later at the January 7, 2016 hearing at issue, the parties voluntarily agreed to an exact time regarding weekend visitation. The mother's actions which the father claims constituted contempt, however, occurred prior to the January 7, 2016 hearing, when a time period was not specified. Thus, the mother cannot be in contempt.

Accordingly, the trial court did not manifestly err in this regard, and the father's assignment of error is without merit.

**DECREE**

The trial court's judgment denying the Rule for Contempt, Change of Custody, and Change in Visitation filed by Defendant/Appellant, Robin G. Delhoste, is affirmed. All costs of this appeal are assessed to Defendant/Appellant, Robin G. Delhoste.

**AFFIRMED.**